UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
TRUSTEES OF THE NEW YORK CITY                                 :
DISTRICT COUNCIL OF CARPENTERS                                :
PENSION FUND, WELFARE FUND, ANNUITY                           :
FUND, AND APPRENTICESHIP,                                     :
JOURNEYMAN RETRAINING,                                        :  23 Civ. 9929 (LGS)
EDUCATIONAL AND INDUSTRY FUND, et al.,                        :
                                                              :  **OPINION AND ORDER**
                                            Petitioners,      :
                                                              :
                     -against-                                :
                                                              :
ALL ACES CORP.,                                               :
                                                              :
                                            Respondent.       :
                                                              :
------------------------------------------------------------- X
LORNA G. SCHOFIELD, District Judge:

Petitioners Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; Trustees of the New York City Carpenters Relief and Charity Fund; and the Carpenter Contractor Alliance of Metropolitan New York (collectively, the "Funds") petition to confirm an arbitration award issued August 2, 2023, (the "Award") pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Respondent All Aces Corp. opposes and cross-petitions to vacate the Award. For the following reasons, the petition to confirm the Award (the "Petition") is granted. Respondent's cross-petition to vacate the Award is denied.

I.     BACKGROUND

    A. Collective Bargaining Agreement

The following facts are provided as background and taken from the parties' submissions. This decision does not depend on the resolution of any disputed factual issues.

Petitioners are (1) trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"), (2) trustees of a charitable organization and (3) a not-for-profit corporation. Respondent is a subcontractor and employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5). Respondent employed union members of the New York City District Council of Carpenters to perform construction work pursuant to an agreement with Petitioners. At issue are the Independent Building Construction Agreement and the Collective Bargaining Agreement (together, the "CBA"), and the Project Labor Agreement ("PLA"), to which a project manager assented on behalf of Respondent on September 11, 2020. Signatories to the PLA agree to be bound by the CBA and local trust agreements for employee benefit funds. The PLA and CBA require that signatory employers make contributions for all employees covered by the PLA to jointly trusteed employee benefit funds at rates prescribed in the PLA. The CBA requires signatories to furnish their books and payroll records when requested by the Funds to conduct audits and ensure compliance with required fund contributions.

The CBA further binds employers to the Funds' Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). Section VI of the Collection Policy states that "[e]xcept as otherwise provided . . . legal action to collect delinquencies shall generally be in the form of arbitration." The Collection Policy grants the Funds' Trustees the power to designate one or more arbitrators to serve in collection matters.

The CBA and Collection Policy provide that, should the Funds be required to arbitrate a dispute or file a lawsuit over unpaid contributions, the Funds are entitled to collect, in addition to the delinquent contributions: (1) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; (2) an amount equal to the greater of (a) interest on the delinquent

contributions or (b) liquidated damages in the amount of 20% of the unpaid contributions; (3) audit costs and (4) reasonable costs and attorney's fees incurred by the Funds for all time spent in collection efforts.

### B. Arbitration

Pursuant to the CBA and Collection Policy, Petitioners conducted an audit of Respondent covering the period September 20, 2020, through December 31, 2021 (the "Audit"). On November 23, 2022, the auditor found that Respondent had failed to remit contributions to Petitioners in the principal amount of $16,954.02. A dispute arose between the parties when Respondent failed to pay the amount the Audit found due. Pursuant to the CBA and Collection Policy, Petitioners initiated arbitration before Arbitrator J.J. Pierson (the "Arbitrator") on January 2, 2023, and mailed a notice of hearing to the Respondent.

The Arbitrator held a hearing and, on August 2, 2023, rendered his Award. The Arbitrator found that Respondent had violated the CBA and ordered Respondent to pay Petitioners $30,247.41, consisting of: (1) the principal delinquency of $16,954.02, (2) interest of $2,643.58, (3) non-Audit late payment interest of $46, (4) liquidated damages of $3,390.80, (5) audit costs of $4,284.25, (6) promotional fund contributions of $28.76, (7) attorney's fees of $1,500, (8) court costs of $402 and (9) arbitration costs of $1,000. On August 3, 2023, Petitioners served Respondent with a demand for payment of the Award.

After Respondent failed to pay, Petitioners timely filed this Petition on November 9, 2023, seeking to confirm and enforce the Award in full.

## II.   STANDARD

Enforcement of an arbitration award issued under a collective bargaining agreement "is governed by section 301 of the LMRA." *Nat'l Football League Mgmt. Council v. Nat'l Football*

*League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016). "Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998);[1] *accord Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Manzo*, No. 21 Civ. 504, 2021 WL 3082291, at *2 (S.D.N.Y. July 20, 2021). The Federal Arbitration Act (FAA) does not apply to arbitrations "conducted pursuant to the LMRA, but the federal courts have often looked to the FAA for guidance in labor arbitration cases." *Nat'l Football League Mgmt. Council*, 820 F.3d at 545 n.13.

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (FAA); *accord Urb. Commons 2 W. LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, No. 21 Civ. 4842, 2022 WL 826982, at *4 (S.D.N.Y. Mar. 18, 2022). A federal court's review of labor arbitration awards is "narrowly circumscribed and highly deferential." *ABM Indus. Grps., LLC v. Int'l Union of Operating Eng'rs, Loc. 30, 30A, 30B, AFL-CIO*, 968 F.3d 158, 161 (2d Cir. 2020). Federal courts are "not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement, but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Nat'l Football League Mgmt. Council*, 820 F.3d at 536; *accord Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v.*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

*Eclipse Constr. Servs. Inc.*, No. 21 Civ. 7868, 2021 WL 5567752, at *3 (S.D.N.Y. Nov. 26, 2021). "[U]nless the award is procured through fraud or dishonesty," a reviewing court "is bound by the arbitrator's factual findings, interpretation of the contract and suggested remedies." *Loc. 97, Int'l Bhd. of Elec. Workers, A.F.L.-C.I.O. v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999); *accord Trs. of the Dist. Council No. 9 Painting Indus. Ins. Fund v. Madison Painting & Decorating Grp.*, No. 22 Civ. 7688, 2023 WL 3687728, at *2 (S.D.N.Y. May 26, 2023).

### III. DISCUSSION

The petition to confirm the Award is granted because Respondent has not sustained its burden of showing that the Arbitrator exceeded the scope of his authority.

#### A. Scope of Authority

An award must be upheld so long as the arbitrator "act[ed] within the scope of his authority" and the award "draws its essence from the collective bargaining agreement." *Nat'l Football League Mgmt. Council*, 820 F.3d at 537. A difference of opinion about the correct interpretation of the contract is not an occasion for judicial intervention. *See, e.g.*, *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision."); *accord United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 275 (2d Cir. 2015).

The Arbitrator did not exceed the scope of his authority. The CBA expressly states that the arbitrator "shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy including, but not limited to, monetary

5

damages" and that the "arbitrator's award in this regard shall be final and binding upon the parties hereto and the individual Employer."  The Arbitrator considered "procedural questions" Respondent had raised, as well as the Audit and its findings.  The procedural questions involved the propriety of the PLA Letter of Assent, which bound Respondent to the PLA and CBA, and thereby to the agreement to arbitrate.  These issues are within the scope of the Arbitrator's authority.

Respondent raises two main arguments to challenge the Award -- first, that Respondent never agreed to arbitrate; and second, that the arbitration was procedurally improper.  Neither of these arguments is a basis for overturning the Award.

### B. Agreement to Arbitrate

Respondent challenges the Award by asserting that Respondent never agreed to arbitrate because it was not bound by the Letter of Assent.  Respondent's argument is that the Letter of Assent is unenforceable because it was signed by Respondent's project manager, "not an executive officer of the Respondent" as required by the PLA.  Even assuming that Respondent did not agree in writing to arbitrate, this argument fails for two reasons.

First, "[i]n the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate." *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) (FAA); *see also ABM Indus. Grps.*, 968 F.3d at 162 (approving assumption theory in binding nonsignatories to arbitration agreements in cases brought under LMRA).  When a nonsignatory "participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration." *N.Y.C. Dist. Council of Carpenters Pension Fund v. Tadco Constr. Corp.*, No. 7 Civ. 2712, 2008 WL 540078, at *5 (S.D.N.Y. Feb. 28, 2008)

(emphasis omitted).  Here, Respondent twice requested and was granted an adjournment of the arbitration hearing.  Respondent's attorney appeared at the hearing, argued Petitioner's position, including about the propriety of the Letter of Assent, and provided additional information after the hearing.  By voluntarily participating in the arbitration proceeding, Respondent bound itself to the outcome of the arbitration.

Second, the Second Circuit "has also bound nonsignatories to arbitration agreements under an estoppel theory." *Thomson-CSF*, 64 F.3d at 778 (FAA); *see also ABM Indus. Grps.*, 968 F.3d at 162 (approving estoppel theory in binding nonsignatories to arbitration agreements in cases brought under the LMRA).  "[W]here a company knowingly accepted the benefits of an agreement with an arbitration clause, even without signing the agreement, that company may be bound by the arbitration clause." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (FAA).  "The benefits must be direct -- which is to say, flowing directly from the agreement." *Id.*  Here, the contract authorized Respondent to perform construction work.  Because Respondent performed and presumably was paid for the work, Respondent is now estopped from asserting that it is not bound by the arbitration agreement.

C. **Arbitration Procedure**

Respondent also argues that the arbitration proceeded in a manner that was highly prejudicial to Respondent because:  (1) the arbitration was not commenced with a claim, but rather with a notice of intent to arbitrate that provided insufficient information to which Respondent could adequately respond and (2) Respondent claims to have been unable to conduct discovery to challenge Petitioners' claim.  These arguments are rejected because they are not proper matters to challenge an LMRA arbitral award.  *See Nat'l Football League Mgmt. Council*, 820 F.3d at 536-37 (a federal court in an LMRA case may "inquire only as to whether the

arbitrator acted within the scope of his authority," not "how we would have conducted the arbitration proceedings").  Even if considered, the arguments fail on their merits.

Petitioners' notice of intent to arbitrate sufficiently satisfied Petitioners' obligations under the CBA.  The CBA states that "either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator, and serving a copy of said notice on the Employer."  The CBA does not specify what the notice of intent to arbitrate must include and Respondent cites no authority that does so.  Petitioners have satisfied their obligation under the CBA by filing the notice of intent to arbitrate with the Arbitrator and serving it on Respondent.

Regardless of the content of the notice, Respondent was thoroughly apprised of the substance of the arbitration claim.  Respondent's requests for adjournment ultimately delayed the hearing by four months, providing Respondent ample time to prepare.  A month before the hearing, Petitioners provided Respondent documents its counsel had requested:  "the applicable report summarizing the audit of Respondent, the [PLA] letter of assent . . . , the applicable PLA, and the applicable [CBA]."  The record shows that Respondent meaningfully participated in the arbitration proceeding.  Respondent had the opportunity to make written and evidentiary submissions, made arguments before the Arbitrator regarding its position on the issues and provided additional information after the hearing.

For the foregoing reasons, the petition to confirm the Award is granted, and Respondent's cross-petition to vacate the Award is denied.

## IV.   ATTORNEY'S FEES AND POST-JUDGMENT INTEREST

In general, "attorney's fees cannot be recovered by the successful party in the absence of

8

statutory authority for the award." *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA "does not provide for attorney's fees in actions to confirm and enforce an arbitrator's award." *Id.* Nevertheless, attorney's fees and costs "may be awarded if the parties contractually agreed as such." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Abba Constr. LLC*, No. 22 Civ. 5699, 2022 WL 17555720, at *4 (S.D.N.Y. Dec. 9, 2022) (citing *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)).

Petitioners are entitled to reasonable attorney's fees and costs under the terms of the CBA. The CBA expressly provides for an award of attorney's fees in connection with an action to recover delinquent contributions by Respondent. The CBA states:

> In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Funds or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer *shall pay to such Fund(s), in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following: . . . (4) reasonable attorney's fees and costs of the action* . . . .

(Emphasis added). The Collection Policy incorporated by the CBA also states that attorney's fees "shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts."

The attorney's fees sought in this confirmation proceeding are reasonable. Petitioners seek $7,378 for 27.3 total hours of work at a rate of $310 per hour for the work performed by associates and a rate of $155 per hour for the work performed by legal assistants. Petitioners' counsel submitted an invoice, dated March 8, 2024, reflecting these hours and rates. The time expended on this action and the rates billed by Petitioners' counsel are reasonable, and are in line

with fee awards in similar cases. *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20 Civ. 6894, 2021 WL 2556130, at *5 (S.D.N.Y. May 13, 2021) (approving the rate of $350 for Petitioners' counsel's partner and $275 for associates).

Petitioners seek $823.39 for costs and services incurred in filing this action. The award for costs is reduced to $421.39, as the filing fee of $402.00 for this action is already included in the Arbitrator's Award of $30,247.41.

Petitioners also request post-judgment interest at the statutory rate. "Pursuant to 28 U.S.C. § 1961, the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017). This rule in 28 U.S.C. § 1961 applies to actions to confirm arbitration. *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100-01 (2d Cir. 2004) (FAA); *accord Trustees of New York City Dist. Council of Carpenters Pension Fund v. 1st Choice Constr. LLC*, No. 20 Civ. 7119, 2021 WL 4482278, at *3 (S.D.N.Y. Sept. 30, 2021). Petitioners' request for interest at the statutory rate prescribed by 28 U.S.C. § 1961, accruing from the date judgment is entered until payment is made, is granted.

V.   **CONCLUSION**

For the foregoing reasons, the petition to confirm the Award is **GRANTED**. Petitioners are entitled to $30,247.41 pursuant to the Award, plus attorney's fees ($7,378.00) and costs ($421.39) totaling $7,799.39. Interest shall accrue from the date judgment is entered until payment is made at the statutory rate prescribed by 28 U.S.C. § 1961. The Clerk of Court is respectfully directed to enter judgment in favor of Petitioners and to close the case.

Dated: April 30, 2024
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**